Terri Lee HALDERMAN et al., Plaintiffs,

v.

PENNHURST STATE SCHOOL AND HOSPITAL et al., Defendants,

United States of America, Plaintiff-Intervenor,

Pennsylvania Association for Retarded Citizens et al., Plaintiffs-Intervenors.

Civ. A. No. 74–1345.

United States District Court, E. D. Pennsylvania.

Oct. 21, 1981.

**424**

David Ferleger, Philadelphia, Pa., for Terri Lee Halderman.

Thomas M. Kittredge, Philadelphia, Pa., for Bucks, Chester and Delaware Counties.

Robert B. Hoffman, Deputy Atty. Gen., Harrisburg, Pa., for the Commonwealth of Pennsylvania.

Thomas Gilhool, Philadelphia, Pa., for Pennsylvania Association for Retarded Citizens.

Herbert B. Newberg, Philadelphia, Pa., for David Ferleger, Esq.

Pamela P. Cohen, Philadelphia, Pa., for Pennhurst Parents Association.

Adjor A. Burrow, Civil Rights Div., Dept. of Justice, Washington, D. C., R. Stephen Barrett, Asst. County Sol., Norristown, Pa., for Montgomery County.

Marc H. Myers, Asst. City Sol., Philadelphia, Pa., for Philadelphia County.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiffs Terri Lee Halderman et al. and the Pennsylvania Association for Retarded Citizens (PARC), et al. have petitioned this Court to apply a portion of the fund which is presently in the Registry of the Court, which fund has been created by Commonwealth defendants' payments of a fine in the nature of a coercive and compensatory civil contempt fine imposed by this Court's Order of August 25, 1981. Specifically, plaintiffs ask the Court to transfer $100,-000.00 from the fund to the Special Master and the Hearing Master to pay for the costs of the Masters' offices during July and August, 1981.

The Commonwealth defendants have been ordered to fund the Masters' offices and, pursuant to monthly Orders, to pay into the Registry of this Court the amounts budgeted each month for the payment of the salaries, wages, and other expenses of both the Hearing Master's office and the Special Master's office. On June 4, 1981, this Court signed, and on June 5, 1981, the Clerk entered two Orders for payments of the costs of the Special Master and the Hearing Master for the month of July, 1981, in the amounts, respectively, of $59,-152.74 and $8,593.34, a total of $67,746.08. These Orders specified that payment was to be made "on or before the first day of July, 1981." The Commonwealth made no payment pursuant to the June 4, 1981 order on or before July 1, 1981. At a conference on July 6, 1981, the Commonwealth advised the Court that it would soon be paying $35,000.00 into the Registry of the Court for the expenses of the Master and that no additional sums would be paid for that purpose unless the Legislature passed a supplemental appropriation. On July 7, 1981, this Court issued an Order to show cause why the Commonwealth defendants should not be held in civil contempt in connection with their failure to comply with the Court's Order of June 4, 1981 to pay $67,746.08 into the Registry of the Court on or before July 1, 1981 for the purpose of defraying the costs of the Special Master and the Hearing Master. On or about July 13, 1981, the Commonwealth paid into the Registry of the Court the sum of $35,000.00. On July 16, 1981, this Court entered an Order direct-

ing that the $35,000.00 be paid to the Office of the Special Master and made a finding that the Commonwealth was in default in the amount of $32,746.08. Since that time, the Commonwealth defendants have failed to comply with six subsequent funding Orders of this Court. The Commonwealth defendants' default now totals $235,984.90. On July 24, 1981, at the hearing on the Order to show cause why the Commonwealth defendants should not be held in civil contempt, the Commonwealth again advised the Court that it did not intend to comply with the Court's Orders concerning the expenses of the Masters.

Based on these events and evidence adduced at the July 24 hearing, the Court concluded that the Department of Public Welfare and its Secretary, Helen O'Bannon, were in contempt of Court (Memorandum of August 25, 1981). Specifically, the Court found that as a result of the actions of the Secretary and the Department, the Legislature did not make an appropriation for the continued functioning of the Masters' offices (Memorandum of August 25, 1981 at 14–18). This Court's Order of August 25, 1981 directed the Department to fund the Masters' offices on or before September 2, 1981 or commence paying into the Registry of this Court $10,000.00 per day as a civil contempt fine. Rather than fund the Masters' offices, the Commonwealth defendants have determined to remain in contempt of this Court's Orders and have, however, paid the civil fine of $10,000.00 per day. As of October 21, 1981, the total amount of the civil fines paid into the Registry of this Court is $300,000.00.

For the reasons discussed herein, the Court will enter an Order transferring $100,000 of the fund in the Court Registry, which now totals $300,000.00, to the Masters for disbursements to be used for the payment of future expenses incurred and wages and salaries hereinafter earned in connection with the full-scale operation of the Masters' offices. In its Order the Court has directed the Masters' offices to resume full-scale operations as of this date. This transfer of funds generated by the compensatory and coercive contempt fines does not

purge the Commonwealth defendants of contempt.

As is now well-known to the litigants, this Court, in an opinion filed December 23, 1977, 446 F.Supp. 1295 made findings of fact and conclusions of law holding that defendants were violating the constitutional and statutory rights of members of the plaintiff class by failing to provide them with minimally adequate habilitation in the least restrictive environment. As the trial record in this case reveals, all parties to this litigation admitted that the residents of Pennhurst were not receiving minimally adequate habilitation. The Court found that Pennhurst as an institution is inappropriate and inadequate to habilitate the retarded. At trial, the Commonwealth represented that it intended to close Pennhurst in the early 1980's. This it has not done.

On January 6, 1978, this Court held a hearing to determine the injunctive remedy necessary. The parties were asked to attempt to agree on the terms of the Court's Order, but no agreement was forthcoming. The Court requested that they submit separate proposed orders. On March 17, 1978, 446 F.Supp. 1295 at 1326, the Court issued an injunction which, among other things, created the Office of the Special Master. The Special Master was appointed to monitor defendants' planning for and the providing of community living arrangements and services in addition to monitoring living conditions at Pennhurst, as well as in the community facilities to which Pennhurst residents would be transferred. The Commonwealth defendants, when not faced with contempt proceedings during a two and one-half year period from the entry of this Court's Order of March 17, 1978 through the end of August, 1980, transferred only 122 of approximately 1,200 Pennhurst residents to community living arrangements. The Commonwealth defendants' failure to comply with this Court's Orders during that period underscored the need for the Masters' offices.

On December 13, 1979, the Court of Appeals approved this Court's appointment of

the Special Master, and its "determination that, for the retarded class members as a whole, Pennhurst cannot be an appropriate setting in which to provide habilitation." (612 F.2d 84 at 114 (3rd Cir.)). In remanding to this Court, the Court of Appeals directed that an individual hearing should be held for any Pennhurst resident who contends that the living arrangements and services available at Pennhurst are more beneficial to his or her habilitation than those made available in the community.

In light of the Third Circuit's opinion, this Court established an impartial hearing procedure and appointed a Hearing Master who was directed to provide an individual hearing for any Pennhurst resident who contended that his or her habilitation at Pennhurst would be more beneficial than that proposed in the community living arrangement. (Order of April 24, 1980).

This Court's Orders provide that the Special Master and the Hearing Master shall be compensated by the Commonwealth defendants (Orders of March 17, 1978; July 27, 1978; April 24, 1980; and June 10, 1980). The funds required for the operation of the Masters' offices are costs of litigation under Federal Rules of Civil Procedure 53 and 54 and were assessed against one of the losing parties by this Court. The Commonwealth defendants did not appeal these Orders. They complied with these Orders and paid the Masters' costs during fiscal years 1978–79, 1979–80, and 1980–81. Funds for those payments were included in the Commonwealth's budget for Pennhurst. In fiscal year 1981–82, however, the Department of Public Welfare and Secretary Helen O'Bannon took steps which this Court found to have been designed to thwart the Court's Orders mandating funding for the Masters' offices. As heretofore discussed, the Court found the Department and Secretary O'Bannon in contempt of court and imposed a compensatory, coercive civil contempt fine upon the Commonwealth for each day that the Masters' offices remained unfunded after September 2, 1981 (Order of August 25, 1981).

On September 3, 1981, United States Supreme Court Justice William J. Brennan, acting as Circuit Justice for the Third Circuit, issued a temporary stay of this Court's contempt Order pending full review of the Commonwealth's application for a permanent stay pending appeal to the Third Circuit. The Third Circuit had already denied a stay. On September 17, 1981, Circuit Justice Brennan denied the application for a stay and vacated his temporary stay Order. The Commonwealth defendants, pursuant to Supreme Court rules, resubmitted the matter to Justice Rehnquist, who referred the application to the full Court, which denied the application for a stay on October 5, 1981, —— U.S. ——, 102 S.Ct. 82, 70 L.Ed.2d 78.

As of this date, $300,000.00 in civil contempt fines has been paid into the Registry of the Court by the Commonwealth defendants. Plaintiffs have asked that $100,000.00 of this money be applied to fund the Masters' offices. Specifically, plaintiffs' petition asks the Court to apply this money to pay the July and August costs of operating the offices of the Special Master and the Hearing Master.

As this Court has found, the continued operation of the office of the Special Master and the fulfillment of her duties on behalf of the retarded residents is necessary for the purpose of monitoring the defendants' compliance with this Court's Orders and is essential for the purpose of assuring that the retarded residents of Pennhurst are being transferred to community facilities that are safe, sanitary and beneficial to their habilitation. The Hearing Master conducts hearings for each Pennhurst resident for whom a community living arrangement has been prepared for the purpose of determining whether the proposed transfer from Pennhurst to the community is "voluntary", as well as for the purpose of determining whether the proposed community living arrangement will be beneficial to his or her habilitation. The Court will not stand idle while Secretary O'Bannon and the Department of Public Welfare attempt to destroy the Masters' offices and vitiate the relief accorded to the retarded residents of Pennhurst. The Court is vitally con-

cerned that no retarded resident of Pennhurst or any other member of the plaintiff class be transferred to any community living arrangement that is not beneficial to his or her habilitation. The Masters' offices ensure that the poor sanitation, safety, habilitation, and training conditions found to exist at Pennhurst are not duplicated on a smaller scale in community living arrangements.

The Court, for the reasons herein enumerated, at this time will authorize the application of a portion of the fund created by the civil contempt fines for the payment of expenses required by the future full-scale operation of the office of the Special Master and the office of the Hearing Master. Back wages, salaries, or fees to consultants that are due and owing for services rendered prior to the date of this Order are not to be paid except as hereafter specifically approved by the Court. The Court will transfer $100,000 of the fund created by the contempt fines to the Special Master and to the Hearing Master in amounts proportionate to their operating costs. These funds are to be used as provided in the Court's Order.

Federal Rule of Civil Procedure 53(a) provides that Masters may be paid out of any fund of the action "which is in the custody and control of the Court as the Court may direct." Title 31 U.S.C. § 725v states that monies in the registry of any United States Court are "subject to disbursement on order approved by the court." The civil contempt fines paid by the Commonwealth have been placed in the Registry of this Court.

Title 18 U.S.C. § 402, concerned with criminal contempt fines, provides that the Court may apportion such fine monies among the parties damaged by the contempt. A court vested with such wide discretion over the use of criminal contempt fine funds clearly possesses the discretion to apply civil contempt fines. Cases arising under 18 U.S.C. § 401, the general contempt statute, buttress this interpretation.

Civil contempt fines, such as those imposed in this case, were intended by this Court to accomplish two purposes—to coerce compliance with the Court's Orders and to compensate for harm sustained by the disobedience of this Court's Orders. Such uses of civil contempt fines have long been recognized. *United States v. United Mine Workers of America*, 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1946); *Nelson v. Steiner*, 279 F.2d 944, 947 (7th Cir. 1960).

In a recent case, the First Circuit found that funds created by court-imposed fines could properly be used to redress the situation originally complained of by plaintiffs. *Cabrera v. Municipality of Bayamon*, 622 F.2d 4 (1st Cir. 1980). Said the First Circuit:

> We note that the payment of fines is creating a sizeable fund that properly could be used to speed rehabilitation or compensate plaintiffs for the special damages they have suffered due to defendants' unjustified delay. The district court controls disposition of these funds . . . the district court may consider further exercise of its equitable power . . . paid for from the fund created by the contempt fines.

622 F.2d at 7–8.

In the face of repeated noncompliance with its orders to improve city prison conditions, a three-judge panel of the Pennsylvania Court of Common Pleas imposed fines totaling $325,000.00 against the City of Philadelphia and established a committee charged with spending the fine proceeds to improve the city prison conditions. *Jackson v. Hendrick*, 22 Crim.L.Rptr. 2356–57 (1978). *See also Palmigiano v. Garrahy*, 448 F.Supp. 659 (D.R.I.1978). The "measure of a Court's power in civil contempt proceedings is determined by the requirements of full remedial relief." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949). *See also* 11 *Wright & Miller, Federal Practice & Procedure* § 2960 at 586 (federal court may frame sanction to fit violation).

The Commonwealth filed a reply to the plaintiffs' petition on Thursday, October 15, 1981. In their reply, they refer to no statute or case law which could inhibit this

Court from transferring these funds for the use of the Masters. Rather, the Commonwealth merely notes that their appeal of the August 25 Contempt Order will be heard by the Third Circuit en banc in late November and that they wish the fine fund to remain undisturbed so that they may seek return of the money should the August 25 Order be reversed.

In light of the defendants' inability to persuade the Third Circuit, Justice Brennan and the Supreme Court of likely ultimate success on the merits in their attempt to stay the Contempt Order, defendants' present argument lacks persuasiveness when weighed against the need for vigorous Masters' offices to supervise compliance with the Court's orders according relief to the plaintiff class and the defendants' culpability in creating the desperate situation confronting the Masters. "The executive branch of government has no right to treat with impunity the orders of the judicial branch. An order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until reversed by orderly and proper proceedings." *Nelson v. Steiner, supra* at 948.

Defendants' contempt has seriously jeopardized the operation of the Masters' offices and is endangering the retarded residents of Pennhurst and the other members of the plaintiff class. The Masters were appointed to monitor the activities of both the Commonwealth and the counties for the purpose of making certain that the retarded residents of Pennhurst receive relief pursuant to the injunctive Orders of this Court. There is no question that the contempt fund may be used to compensate the Masters.