Terri Lee HALDERMAN et al., Plaintiffs,

v.

**PENNHURST STATE SCHOOL AND HOSPITAL et al., Defendants,**

**United States of America, Plaintiff-Intervenor,**

**Pennsylvania Association for Retarded Citizens et al., Plaintiffs-Intervenors.**

Civ. A. No. 74–1345.

United States District Court, E. D. Pennsylvania.

Jan. 6, 1982
On Motion To Purge Contempt
Jan. 8, 1982.

David Ferleger, Philadelphia, Pa., for Terri Lee Halderman.

Thomas M. Kittredge, Philadelphia, Pa., for Bucks, Chester and Delaware Counties.

Robert B. Hoffman, Deputy Atty. Gen., Harrisburg, Pa., for the Commonwealth of Pennsylvania.

Thomas Gilhool, Philadelphia, Pa., for Pennsylvania Association for Retarded Citizens.

Herbert B. Newberg, Philadelphia, Pa., for David Ferleger, Esq.

Pamela P. Cohen, Philadelphia, Pa., for Pennhurst Parents Association.

R. Stephen Barrett, Asst. County Sol., Norristown, Pa., for Montgomery County.

Marc H. Myers, Asst. City Sol., Philadelphia, Pa., for Philadelphia County.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

On August 25, 1981 this Court found defendants Commonwealth of Pennsylvania

Department of Public Welfare and its Secretary, the Honorable Helen O'Bannon in contempt of this Court's Orders of June 4, 1981 and July 14, 1981 and entered that same day an Order requiring them to pay into the Registry of this Court a compensatory, coercive civil contempt fine of $10,000 per day for each day after September 2, 1981 that full payment was not made pursuant to this Court's Orders of June 4, 1981 and July 14, 1981, which amounts had been determined as necessary for the Offices of the Special Master and the Hearing Master for July and August, 1981. With the exception of a short period during which United States Supreme Court Justice William J. Brennan, sitting as Circuit Justice for the Third Circuit, entered a temporary stay, subsequently vacated, —— U.S. ——, 102 S.Ct. 82, 70 L.Ed.2d 78, of the Order, the Commonwealth defendants have paid the $10,000 per day fine since that date.

The Court also issued the following Orders requiring the Commonwealth defendants, pursuant to this Court's Orders of March 17, 1978, 446 F.Supp. 1295 at 1326, July 27, 1978, April 24, 1980 and June 10, 1980, to fund the Special Master and the Hearing Master:

—Orders of August 20, 1981 to pay $67,746.07 into the Registry of this Court on or before September 1, 1981 for the purpose of defraying the costs of the Special Master and the Hearing Master;

—Orders of September 16, 1981 to pay $67,746.68 into the Registry of this Court on or before October 1, 1981 for the purpose of defraying the costs of the Special Master and the Hearing Master;

—Orders of October 22, 1981 to pay $67,746.68 into the Registry of this Court on or before November 1, 1981 for the purpose of defraying the costs of the Special Master and the Hearing Master;

—Order of November 18, 1981 to pay $8,594.00 into the Registry of this Court on or before December 1, 1981 for the purpose of defraying the costs of the Hearing Master;

—Order of November 24, 1981 to pay $59,152.68 into the Registry of this Court on or before December 1, 1981 for the purpose of defraying the costs of the Special Master.

The Commonwealth defendants have defaulted on all of these Orders, bringing their total default on Orders to fund the Masters to $371,478.27. Plaintiffs have filed motions that defendants should be found in contempt for their failure to comply with these Orders of the Court.

On December 11, 1981, the Court issued a Rule to Show Cause why the Commonwealth defendants should not be held in contempt and scheduled a hearing to show cause. At the hearing, held on December 21, 1981, counsel for the Commonwealth defendants and counsel for the plaintiffs agreed that the presentation of additional evidence was unnecessary in that all parties would be bound by the evidence concerning contempt presented at the hearing held on July 24, 1981. Upon consideration of these motions, responses thereto, previous pleadings and hearings regarding the contempt Orders of this Court, for the reasons set forth in this Court's Memorandum of August 25, 1981, the Court finds that the Commonwealth defendants are in contempt of the Orders of this Court.

As is now well known to the litigants, the Court, in an opinion entered December 23, 1977, 446 F.Supp. 1295, found defendants to have violated the constitutional and statutory rights of the plaintiff class. On March 17, 1978, the Court issued an Order, 446 F.Supp. 1295 at 1326, setting forth the injunctive relief to which the plaintiff class was entitled. Part of this relief included a Special Master who would monitor the defendants' compliance with the Court's Orders in this matter. The Court's Order of April 24, 1980 established a Hearing Master to provide further procedural protections for the retarded members of the class. These and other Orders of the Court (Orders of June 27, 1978 and June 10, 1980) have required the Commonwealth defendants to fund the Masters' Offices and, as

heretofore pointed out, the costs of the Masters' Offices are costs of litigation pursuant to Rules 53 and 54 of the Federal Rules of Civil Procedure, costs which have been assessed against the Commonwealth defendants. During 1978, 1979, and 1980, the Commonwealth defendants paid the costs of the Special Master and the Hearing Master without challenging the aforementioned Orders.

As set forth in the Court's Memorandum of August 25, 1981, the Commonwealth defendants engaged in a concerted effort to induce the state legislature to refuse to appropriate the funds necessary to operate the Master's Offices. After succeeding in this attempt to subvert the Court's Orders in this case, the Commonwealth defendants then took the position that they were prevented from complying with the Court's Orders to fund the Masters' Offices. The Court found that the Commonwealth defendants were in contempt of this Court's Orders of June 4, 1981 and July 14, 1981. The Court, in its Order of August 25, 1981, ordered the Commonwealth defendants to pay a coercive and compensatory civil contempt fine of $10,000 per day. Although the Commonwealth defendants have paid fines which now total more than $900,000, they have made no attempt to comply with the Court's funding Orders. Since August, 1981, the Commonwealth defendants have continued their contempt of this Court's Orders requiring them to fund the Offices of the Special Master and the Hearing Master. We therefore find that defendants Commonwealth of Pennsylvania Department of Public Welfare and its Secretary, the Honorable Helen O'Bannon, are in contempt of the Orders of this Court dated August 20, 1981, September 16, 1981, October 22, 1981, November 18, 1981, and November 24, 1981.

### On Motion To Purge Contempt

Defendants Commonwealth of Pennsylvania Department of Public Welfare and its Secretary, the Honorable Helen O'Bannon (hereinafter, the Commonwealth defendants), have filed with this Court a motion asking that they be purged of contempt and relieved of their obligation to make payments in the future of the coercive and compensatory civil contempt fine of $10,000 per day pursuant to this Court's Memorandum and Order of August 25, 1981, finding them in contempt for failing to fund the Offices of the Special Master and the Hearing Master in this case. For the reasons hereinafter set forth, the Court will purge the Commonwealth defendants of contempt and relieve the Commonwealth defendants of their obligation to make payments in the future based upon the Court's finding that the total fines paid to date will be used by this Court to carry out the Court's injunctive Orders in this case. The Court will use its equitable power over the fund created by the fines to finance the Offices of the Special Master and the Hearing Master during the remainder of the fiscal year 1981–82 in accordance with budgets approved by this Court, and in addition pay the past due obligations for operating the Masters' offices during the period from July 1, 1981 to October 21, 1981.

On August 25, 1981, this Court found the Commonwealth defendants were in civil contempt because of their failure to comply with this Court's Orders of June 4, 1981 to pay into the Registry of this Court $67,746.08 by July 1, 1981 for the purpose of defraying the expenses of the Special Master and the Hearing Master and July 14, 1981 to pay $67,746.08 into the Court Registry by August 1, 1981 for the same purpose.

As is well-known to the litigants, the Commonwealth defendants have been ordered (Orders of March 17, 1978, 446 F.Supp. 1295 at 1326, July 27, 1978, and April 24, 1980) to fund the Master's offices and, pursuant to monthly orders, pay into the Registry of this Court the amounts budgeted each month for the payment of the salaries, wages, and other expenses of both the Hearing Master's office and the Special Master's office. On June 4, 1981, this Court signed, and on June 5, 1981, the Clerk entered two Orders for payment of the costs of the Special Master and the Hearing Master for the month of July, 1981, in the amounts, respectively, of $59,-

152.74 and $8,593.34, a total of $67,746.08. These Orders specified that payment was to be made "on or before the first day of July, 1981." The Commonwealth defendants made no payment pursuant to the Order of June 4, 1981 on or before July 1, 1981. At a conference on July 6, 1981, the Commonwealth advised the Court that it would soon be paying $35,000.00 into the Registry of the Court for the purpose of closing the Office of the Special Master and that no additional sums would be paid for that purpose unless the Legislature passed a supplemental appropriation.

On July 7, 1981, this Court issued an Order to show cause why the Commonwealth defendants should not be held in civil contempt in connection with their failure to comply with the Court's Order of June 4, 1981 to pay $67,746.08 into the Registry of the Court on or before July 1, 1981 for the purpose of defraying the costs of the Special Master and the Hearing Master. On or about July 13, 1981, the Commonwealth defendants paid into the Registry of the Court the sum of $35,000.00. On July 16, 1981, this Court entered an Order directing that the $35,000.00 be paid to the Office of the Special Master and made a finding that the Commonwealth defendants were in default in the amount of $32,746.08. Since that time, the Commonwealth defendants have failed to comply with eight subsequent funding Orders of this Court. The Commonwealth defendants' default now totals $371,478.27. On July 24, 1981, at the hearing on the Order to show cause why the Commonwealth defendants should not be held in civil contempt, the Commonwealth defendants again advised the Court that they did not intend to comply with the Court's Orders concerning the expenses of the Masters.

Based on these events and evidence adduced at the July 24 hearing, the Court concluded that the Department of Public Welfare and its Secretary, Helen O'Bannon, were in contempt of Court (Memorandum of August 25, 1981). Specifically, the Court found that as a result of the actions of the Secretary and the Department, the Legislature did not make an appropriation for the continued functioning of the Masters' offices (Memorandum of August 25, 1981 at 14–18). This Court's Order of August 25, 1981 directed the Department to fund the Master's offices on or before September 2, 1981 or commence paying into the Registry of this Court $10,000.00 per day as a civil contempt fine. Rather than fund the Masters' offices, the Commonwealth defendants have determined to remain in contempt of this Court's Orders and have, however, paid the civil fine of $10,000.00 per day. As of this date, the total amount of the civil fines paid into the Registry of this Court exceeds $1,200,000.00.

On October 21, 1981, the Court transferred $87,314.30 of the sum resulting from the Commonwealth defendants' payments of civil contempt fines to the Special Master and $13,695.60 to the Hearing Master. The Court ordered further transfer of the sum resulting from the payment of civil contempt fines, $80,371.12 to the Special Master and $13,588.14 to the Hearing Master. More than $1,000,000.00 of the fund generated by the fine payments remains subject to Court Order.

As is now well-known to the litigants, this Court, in an opinion filed December 23, 1977, 446 F.Supp. 1295, made findings of fact and conclusions of law holding that defendants were violating the constitutional and statutory rights of members of the plaintiff class by failing to provide them with minimally adequate habilitation in the least restrictive environment. As the trial record in this case reveals, all parties to this litigation admitted that the residents of Pennhurst were not receiving minimally adequate habilitation. The Court found that Pennhurst as an institution is inappropriate and inadequate to habilitate the retarded. At trial, the Commonwealth defendants represented that they intended to close Pennhurst in the early 1980's. This they have not done.

On January 6, 1978, this Court held a hearing to determine the injunctive remedy necessary. The parties were asked to attempt to agree on the terms of the Court's

Orders, but no agreement was forthcoming. The Court requested that they submit separate proposed orders. On March 17, 1978, the Court issued an injunction, 466 F.Supp. 1295 at 1326, which, among other things, created the Office of the Special Master. The Special Master was appointed to monitor defendants' planning for and the providing of community living arrangements and services in addition to monitoring living conditions at Pennhurst, as well as in the community facilities to which Pennhurst residents would be transferred. The Commonwealth defendants, when not faced with contempt proceedings during a two-and-a-half-year period from the entry of this Court's Order of March 17, 1978, 466 F.Supp. 1295 at 1326, through the end of August, 1980, transferred only 122 of approximately 1,200 Pennhurst residents to community living arrangements. The Commonwealth defendants' failure to comply with this Court's Orders during that period underscored the need for the Masters' offices.

On December 13, 1979, the Court of Appeals approved this Court's appointment of the Special Master, and its "determination that, for the retarded class members as a whole, Pennhurst cannot be an appropriate setting in which to provide habilitation." (612 F.2d 85 at 114 [3rd Cir.].) In remanding to this Court, the Court of Appeals directed that an individual hearing should be held for any Pennhurst resident who contends that the living arrangements and services available at Pennhurst are more beneficial to his or her habilitation than those made available in the community.

In light of the Third Circuit's opinion, this Court established an impartial hearing procedure and appointed a Hearing Master who was directed to provide an individual hearing for any Pennhurst resident who contended that his or her habilitation at Pennhurst would be more beneficial than that proposed in the community living arrangement. (Order of April 24, 1980).

This Court's Orders provide that the Special Master and the Hearing Master shall be compensated by the Commonwealth defend-ants (Orders of March 17, 1978, 446 F.Supp. 1295 at 1326; July 27, 1978; April 24, 1980; and June 10, 1980). The funds required for the operation of the Master's offices are costs of litigation under Federal Rules of Civil Procedure 53 and 54 and were assessed against one of the losing parties by this Court. The Commonwealth defendants did not appeal these Orders. They complied with these Orders and paid the Master's costs during fiscal years 1978–79, 1979–80, and 1980–81. Funds for those payments were included in the Commonwealth's budget for Pennhurst. In fiscal year 1981–82, however, the Department of Public Welfare and Secretary Helen O'Bannon took steps which this Court found to have been designed to thwart the Court's Orders mandating funding for the Masters' offices. As hereinafter discussed in great detail, the Court found the Department and Secretary O'Bannon in contempt of court and imposed a compensatory coercive civil contempt fine upon the Commonwealth defendants for each day that the Masters' offices remained unfunded after September 2, 1981 (Order of August 25, 1981).

On September 3, 1981, United States Supreme Court Justice William J. Brennan, acting as Circuit Justice for the Third Circuit, issued a temporary stay of this Court's contempt Order pending full review of the Commonwealth defendants' application for a permanent stay pending appeal to the Third Circuit. The Third Circuit had already denied a stay. On September 17, 1981, Circuit Justice Brennan denied the application for a stay and vacated his temporary stay Order. The Commonwealth defendants, pursuant to Supreme Court rules, resubmitted the matter to Justice Rehnquist, who referred the application to the full Court, which denied the application for a stay on October 5, 1981, —— U.S. ——, 102 S.Ct. 82, 70 L.Ed.2d 78.

As this Court has found, the continued operation of the office of the Special Master and the fulfillment of her duties on behalf of the retarded residents is necessary for the purpose of monitoring the defendants' compliance with this Court's Orders

and is essential for the purpose of assuring that the retarded residents of Pennhurst are being transferred to community facilities that are safe, sanitary and beneficial to their habilitation. The Hearing Master conducts hearings for each Pennhurst resident for whom a community living arrangement has been prepared for the purpose of determining whether the proposed transfer from Pennhurst to the Community is "voluntary", as well as for the purpose of determining whether the proposed community living arrangement will be beneficial to his or her habilitation. The Court is vitally concerned that no retarded resident of Pennhurst or any other member of the plaintiff class be transferred to any community living arrangement that is not beneficial to his or her habilitation. The Masters' offices ensure that the poor sanitation, safety, habilitation, and training conditions found to exist at Pennhurst are not duplicated on a smaller scale in community living arrangements.

For the reasons set forth in its Memorandum of January 6, 1982, the Court found the Commonwealth defendants likewise in contempt for their failure to comply with the Court's Orders of August, September, October, and November. In its Memorandum of August 25, 1981, the Court detailed its reasons for holding the Commonwealth defendants in contempt. Essentially, the Court found that Secretary O'Bannon and the Department had failed to act with due diligence and steadfast purpose to comply with the valid Orders of this Court. As a result, the Masters' offices were without funding.

The Court, in its Memorandum of August 25, 1981, concluded that it possessed inherent equitable powers to effectuate compliance with its Orders through the imposition of civil contempt fines. The Court rejected Commonwealth defendants' argument that Secretary O'Bannon had acted in good faith, finding good faith inapplicable to a civil contempt proceeding. Furthermore, the Court found that she had not acted in good faith. The Court also rejected the Commonwealth defendants contention that the action of the Legislature raised a state law barrier to compliance by the Commonwealth defendants. *See* Memorandum of August 25, at 13–22. Thus, after various challenges to the Court's contempt Order, the Commonwealth defendants began paying a civil contempt fine of $10,000.00 per day.

The Commonwealth defendants, while paying $10,000.00 per day in fines, have nevertheless failed to comply with this Court's Orders of June 4, 1981, July 14, 1981, August 20, 1981, September 16, 1981, October 22, 1981, November 18, 1981, and November 24, 1981, ordering them to pay a total of $406,478.27 into the Registry of this Court for the purpose of defraying the costs of the Special Master and the Hearing Master. To date, the Commonwealth defendants have paid only $35,000.00 of this amount.

The Commonwealth defendants maintain that they have been unable to comply with the funding Orders of this Court because the Legislature failed to appropriate a special fund for the Masters' offices for the fiscal year 1981–82 and that, therefore, no funds will be forthcoming from the Commonwealth defendants for the remainder of the fiscal year. The Court remains unimpressed with this contention and has not been persuaded that the Commonwealth defendants have been totally without funds sufficient to comply with the Court's Orders. Nevertheless, the Court finds that the contempt of the Commonwealth defendants has inflicted a continuous harm on the plaintiff class which will continue until at least July 1, 1982.

On July 24, 1981, at the hearing on the Order to show cause why the Commonwealth defendants should not be held in civil contempt, the Commonwealth defendants advised the Court that they did not intend to comply with the Court's Orders concerning the expenses of the Masters. However, the Commonwealth defendants stated at that hearing that they were not "contest[ing] the underlying validity of [the Court's] Orders. (N.T. at 100).

The United States Supreme Court has stated that "federal courts are not reduced to issuing injunctions against state officers and hoping for compliance. Once issued, an injunction may be enforced.... If a state agency refuses to adhere to a court order, a financial penalty may be the most effective means of insuring compliance." *Hutto v. Finney*, 437 U.S. 678, 690–91, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978).

■ Liability for civil contempt accrues when a defendant violates an order, knowing it to have been issued. *Thompson v. Johnson*, 410 F.Supp. 633 (E.D.Pa.1976), aff'd, 556 F.2d 568 (3d Cir. 1977). The purpose of a civil contempt remedy is to coerce compliance with the court order and to compensate the party who is the beneficiary of the court order for the failure to comply. *Cromoglass Corp. v. Ferm*, 500 F.2d 601, 604 (3d Cir. 1974); *U. S. v. Spectro Foods Corp.*, 544 F.2d 1175, 1176, 1182–83 (3d Cir. 1976).

■ On December 4, 1981, the Commonwealth defendants filed with this Court a motion to "modify" the contempt order and "purge" them of the contempt. Commonwealth defendants styled this request as a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. However, a close examination of the relief requested by the Commonwealth defendants and the reasoning supporting that request shows their motion is a motion addressed to the Court's inherent power to purge defendants of contempt. The Court has therefore considered the motion as one requesting a purging of the Commonwealth defendants' contempt and termination of their obligation to continue payment of the daily fines.

Although the Commonwealth defendants have taken no affirmative action to comply with the Court's Orders, they have paid a daily fine of $10,000.00 per day. These payments now exceed $1,200,000.00. To date, twelve orders of this Court requiring funding for the Masters have gone unheeded by the Commonwealth defendants. The Masters' offices regained funding for full-scale operation on October 21, 1981, when, pursuant to this Court's Order of October 20, 1981, $87,314.40 and $13,695.60 in funds created by the Commonwealth defendants' payment of the civil contempt fines were transferred to the Special Master and the Hearing Master, respectively.

On December 11, 1981, the Court transferred $80,371.21 of the fine payments to the Special Master and $13,588.48 of the fine payments to the Hearing Master to enable these offices to continue full-scale operation after the funds transferred on October 20, 1981 were exhausted. Thus far, the offices of the Special Master and the Hearing Master have spent approximately $130,000.00 of the funds generated by the payment of civil contempt fines during the period October 21, 1981 through January 3, 1982.

As the Commonwealth defendants have pointed out, they have paid into the Court Registry more money than the Masters' budgets for the fiscal year in question. They assert, and the Court acknowledges, that it seems inequitable to continue collecting fines when the funds collected exceed the amounts needed to enable the Masters' offices to operate. For this reason, the Court will relieve the Commonwealth defendants of their obligation to continue paying the $10,000.00 per day civil contempt fine.

As this Court determined in its Memorandum of October 21, 1981, 526 F.Supp. 423, a federal court possesses broad equitable power to apply funds generated by civil contempt fines in order to accomplish the purpose of the injunction violated. *See* Memorandum of October 21, 1981 at 427–428. The Special Master and the Hearing Master are necessary to ensure that members of the plaintiff class receive the full constitutional and statutory rights to which they are entitled. This Court will continue to exercise its equitable right to apply the fund resulting from fine payments in order to carry out its injunctive orders.

Since transferring some of the fund created by the payment of civil contempt fines on October 21, 1981, this Court has required that the Special Master and the Hearing

Master each week submit to the Court a list of proposed expenditures for the week. The Court reviews these expenditures, approving only those that are consistent with the Court's Memorandum of October 21, 1981, 526 F.Supp. 423, and Order of October 20, 1981. Since the Masters' offices resumed full-scale operation on October 21, 1981, expenditures have averaged $10,665.00 per week for the Special Master and $1,699.00 per week for the Hearing Master. Extrapolated, this would result in expenditures of approximately $550,000.00 per year for the Special Master and $90,000.00 per year for the Hearing Master, compared with the 1981–82 proposed budgets submitted by the Commonwealth defendants to the Legislature totaling $900,000.00. These recent expenditures indicate a reduction of more than 25 percent in the Masters' budgets. The Masters have taken steps, pursuant to the Court's close supervision, to operate in the least costly and most efficient manner possible.

The Court has requested the Special Master and the Hearing Master to provide the Court with a budget through June 30, 1982 conditioned on the representations of the Commonwealth defendants that they will perform meaningful reviews of the individual habilitation plans developed for members of the plaintiff class. These submissions indicate that, for the 1981–82 fiscal year ending June 30, 1982, the Special Master and the Hearing Master will require $343,585.00.

In approving the budget of the Special Master for the 1981–82 fiscal year, which ends on June·30, 1982, the Court has assumed that the Commonwealth defendants will adequately perform the task, which they have agreed to undertake, of reviewing individual habilitation plans and will in the future commence the essential task of conducting meaningful inspection of all community living arrangements to which the members of the plaintiff class are transferred so that the health, safety, and habilitation hazards found to exist at Pennhurst are not duplicated on a smaller scale in the community. The Court will, therefore, enter an Order authorizing the Clerk of the Court to pay on the first day of February, March, April, May, and June such sums as are approved by this Court for the purpose of operating the Masters' offices. The remainder of the fund generated by the Commonwealth defendants' payment of civil contempt fines will be held in interest-bearing accounts pending further orders of this Court.

The Order authorizing continued funding to the Offices of the Special Master and the Hearing Master through June 30, 1982, which the Court will enter on this date, does not involve funds that will be needed to pay past due obligations incurred by the Offices of the Special Master and the Hearing Master during the July 1, 1981 to October 21, 1981 period when the Masters were deprived of funding prior to this Court's Order of October 20, 1981 transferring funds resulting from the civil contempt fines. The Court will direct the Masters to submit to this Court detailed accounts of these past obligations and will at a later date enter an Order transferring from the fund resulting from fine payments a sufficient amount to pay such of these obligations as are approved by the Court. The Special Master and the Hearing Master shall submit these reports on or before February 15, 1982.

The Commonwealth defendants, although they have failed to comply with the Orders of this Court, will nevertheless be purged of the contempt in view of the fact that they have paid fines in an amount sufficient to comply with this Court's injunctive Orders requiring them to pay the costs of the Masters, and will be relieved of this obligation to continue to pay $10,000.00 per day in coercive and compensatory civil contempt fines. An appropriate Order will be accordingly entered.