**Vincent J. DeFELICE, Jr.**

v.

**PHILADELPHIA BOARD OF EDUCATION, and Mark R. Shedd, Superintendent of Schools of Philadelphia.**

**Civ. A. No. 69-863.**

United States District Court
E. D. Pennsylvania.

Dec. 18, 1969.

---

Benjamin Pomerantz, Philadelphia, Pa., for plaintiff.

Martin Horowitz, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

FULLAM, District Judge.

This is a civil rights action for compensatory damages of $1,000,000 and punitive damages of $3,000,000 pursuant to 42 U.S.C. § 1983. Federal question jurisdiction is asserted under 28 U.S.C. § 1343(3). Plaintiff alleges that he was denied his fourteenth amendment guarantee of due process and equal protection by the actions of the defendants,

the Philadelphia Board of Education and its chief administrative officer.

The underlying facts are not in dispute. Plaintiff was employed by the Board as a physical education teacher at Simon Gratz High School. On February 11, 1969, he applied for a transfer to fill a long-existing vacancy for the same position at George Washington High School. At the time Mr. DeFelice requested the transfer, the faculty at George Washington was more than 90% Caucasian. Although Mr. DeFelice was qualified for the position at George Washington, his transfer request was denied, because he is Caucasian.

Plaintiff has filed a motion for partial summary judgment on the issue of liability. In essence, his position is that the fourteenth amendment precludes any and all state action predicated on race. The corollary of this proposition would seem to be that state action designed to eradicate or alleviate existing *de facto* segregation or related conditions by affirmative measures which require consideration of race in their implementation are unconstitutional.

The defendants have not addressed themselves to the merits of plaintiff's constitutional claim. Rather, they contend that their action was mandated by an order of the Pennsylvania Human Relations Commission[1] and by the terms of the 1968 Collective Bargaining Agreement between the Board and the Philadelphia Federation of Teachers.

On October 19, 1967, the Commission filed a complaint alleging that the transfer provisions of the 1966 Collective Bargaining Agreement between the Board and the Philadelphia Federation of Teachers violated the provisions of the Pennsylvania Human Relations Act, 43 Pa.Stat.Ann. § 951 et seq., in that the contractual provisions perpetuated racially imbalanced faculties producing education of inferior quality in the schools affected.

---

1. Pennsylvania Human Relations Commission vs. School District of Philadelphia and Philadelphia Federation of Teachers, Local #3, AFL-CIO, No. S-45 (1967).

Before the Commission filed its final decision on March 3, 1969, the Board and the Federation negotiated a new Collective Bargaining Agreement (the 1968 Agreement). Under this Agreement, the Board was authorized to transfer teachers within their first year of service without their consent in order to eliminate racial imbalance. Moreover, the Agreement provided that new teachers would be assigned in such a fashion as to alleviate existing racial imbalance. In view of these two provisions, the Commission decided not to require any immediate action concerning the 1968 Agreement. However, in its conclusions of law, the Commission stated:

"5. The provisions * * * [of] the Pennsylvania Human Relations Act require the respondent, School District of Philadelphia, to take affirmative steps to achieve racial balance of public school faculties.

"6. The provisions of the collective bargaining agreement between the respondent, School District of Philadelphia, and the respondent, Philadelphia Federation of Teachers * * * may not provide procedures or rules governing the transfer of teachers where such procedures or rules prevent the effective achievement of racial balance in the public school faculties within a reasonable time."

The Board takes the position that its refusal to transfer Mr. DeFelice was in compliance with the above conclusions of the Commission and its final order. It also argues that Paragraph 4(c) (iii) (a) of the 1968 Agreement specifically prohibits the voluntary transfer sought by Mr. DeFelice.

There is no doubt that the Board's action was mandated by the decision of the Commission, although the Board has not seen fit to articulate in this Court the precise legal significance of this fact. In my view, its position does raise the issue of whether the doctrine of immunity insulates the Board and Dr. Shedd from an action for damages.

The law is now clear that when immunity is properly invoked, it constitutes a defense to an action for damages under section 1983. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). For example, it has been held that legislators, Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); judges, Pierson v. Ray, *supra*; and state prosecutors, Bauers v. Heisel, 361 F.2d 581 (3rd Cir. 1966) (en banc) are immune from damage suits under section 1983, when acting within their respective official spheres. It is also clear that a person or entity acting pursuant to a court order is clothed with immunity derivatively, Lockhart v. Hoenstine, 411 F.2d 455 (3rd Cir. 1969).

The Pennsylvania Human Relations Commission is a legislatively created administrative body empowered to exercise rule-making, investigatory, prosecutorial and adjudicatory functions. 43 Pa.Stat. Ann. §§ 956–957. In carrying out its adjudicatory function, the Commission is authorized to issue final orders, willful violation of which is subject to criminal penalties. 43 Pa.Stat.Ann. § 961. Its final orders are reviewable pursuant to the Administrative Agency Law, 71 Pa.Stat.Ann. § 1710.41. Moreover, enforcement proceedings by the Commission itself are provided for under 43 Pa.Stat.Ann. § 960.

Under the statutory scheme, the Commission's orders are binding upon the parties to the adjudication. Enforcement thereof merely adds the possible sanction of contempt proceedings for violation of the enforcing court's decree, while at the same time insuring the respondent in the litigation an opportunity for judicial review before enforcement.

Applying the principles of immunity outlined above to the present case, I have concluded that the defendants are immune from civil liability. It is simply inconceivable that a municipal entity and its chief executive officer could be held liable in damages for actions which the Commission's decision required them to take. The reasoning of Lockhart v. Hoenstine, *supra*, where a

court prothonotary was held immune from suit for actions taken pursuant to a court order, is equally applicable to the present case. Cf. Gibson v. Reynolds, 172 F.2d 95 (8th Cir. 1949). Plaintiff's motion for summary judgment will therefore be denied.

■ The fact that the defendants have not filed a cross-motion for summary judgment does not preclude this Court from entering judgment on its own motion. Proctor & Gamble Independent Union of Port Ivory v. Proctor & Gamble Manu. Co., 312 F.2d 181, 2 Cir., cert. denied, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963); Boeing Co. v. International Union, United Automobile, Aerospace, and Agricultural Implement Workers et al., 234 F.Supp. 404 (E.D.Pa.1966). Accordingly, since the defendants are entitled to a judgment as a matter of law, summary judgment will be entered in favor of the defendants.