**DANIEL B., and Jerry G. on behalf of themselves and all others similarly situated**

**v.**

**Helen O'BANNON, in her official capacity as Secretary, Department of Public Welfare, Commonwealth of Pennsylvania, and Leon Soffer, in his official capacity as County Administrator, Philadelphia County Mental Retardation Program, and City of Philadelphia.**

Civ. A. No. 79–4088.

United States District Court, E.D. Pennsylvania.

June 11, 1984.

Andrew F. Erba, Community Legal Services, Inc., and Edmond A. Tiryak, Philadelphia, Pa., for plaintiffs.

Gabriel L. Bevilacqua, Philadelphia, Pa., for City of Philadelphia.

Alan J. Davis, City Sol., Joseph M. Davidson, Marc H. Myers, Shelly Yanoff, Asst. City Solicitors, Richard J. Gold, Pauline C. Cohen, Chief, Asst. City Solicitors, Philadelphia, Pa., for Leon Soffer, Ph.D and The City of Philadelphia.

Michael Harvey, Deputy Atty. Gen., Dept. of Justice, Civ. Litigation Div., Harrisburg, Pa., for Helen O'Bannon.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Plaintiffs filed this action on behalf of a putative class of mentally retarded individuals institutionalized at Woodhaven Center ("Woodhaven"), an intermediate care facility for the mentally retarded operated by Temple University under contract with the Commonwealth of Pennsylvania. Plaintiffs sought declaratory and injunctive relief for all Woodhaven residents "who are unnecessarily institutionalized at that facility because defendant state officials have failed to fulfill their federal and state duties to provide plaintiffs with suitable community living arrangements." Third Amended Complaint ¶ 1. Plaintiffs brought this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and 28 U.S.C. § 1331; jurisdiction was conferred by 28 U.S.C. § 1343(3) and (4).

The plaintiffs, residents of Woodhaven, sought to represent a class consisting: of all mentally retarded individuals who presently reside or in the future will reside at the Woodhaven Center, whose domicile is Philadelphia, and who have completed or will complete their treatment regimen there but are unable to leave that institution due to the defendants' failure to perform their duties under federal and state law to provide them suitable community living arrangements. Third Amended Complaint ¶ 11. Plaintiffs alleged the Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania:

has the responsibility, *inter alia*, to: (i) assure within Pennsylvania the availability and equitable provision of mental retardation services to all persons who need them; (ii) assist each county and Philadelphia in carrying out mental retardation duties; and (iii) supervise and fund mental retardation facilities, services and programs.

Third Amended Complaint ¶ ¶ 6, 7. Plaintiffs alleged the Deputy Commissioner of the Philadelphia Office of Mental Health and Retardation, and the City of Philadelphia:

have the responsibility, *inter alia*, to: (i) establish a mental retardation program in Philadelphia for the care, treatment and rehabilitation of the mentally retarded; (ii) establish multidisciplinary staff units known as base service units to provide such service; (iii) direct, control and monitor the activities of the base service units, including aftercare services to prevent unnecessary and prolonged institutionalization and the creation and operation of community living arrangements.

Third Amended Complaint ¶ 10. The complaint concerned not the treatment received at Woodhaven but the failure to release plaintiffs into community treatment programs.

Plaintiffs alleged they voluntarily committed themselves to Woodhaven pursuant to contracts entered into with Woodhaven and plaintiffs' respective base service units ("BSU"). Third Amended Complaint ¶ ¶ 19, 30. The contracts called for Woodhaven to provide appropriate treatment programs for plaintiffs and for the BSUs to provide community living arrangements when plaintiffs completed these treatment programs. Third Amended Complaint ¶ ¶ 21, 32. Plaintiffs alleged that although they completed their Woodhaven treatment programs and were referred by the Woodhaven staff to BSUs for community placement, they have not been placed in community living arrangements. Third Amended Complaint ¶ ¶ 24, 25, 35 and 36. Plaintiffs alleged that they have not been placed "because defendants ... have failed to discharge their ... duties under federal and state law to provide plaintiffs with suitable community living arrangements." Third Amended Complaint ¶ ¶ 25, 36.

Plaintiffs sought a declaratory judgment that defendants violated plaintiffs' right to treatment and protection from harm provided in the Eighth and Fourteenth Amendments to the United States Constitution, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6000 *et seq.*, Third Amended Complaint ¶¶ 48, 49, and defendants' duty under Pennsylvania law to provide treatment in the least restrictive alternative. Third Amended Complaint, ¶ 50. However, at the last pretrial conference plaintiffs withdrew their claims under the Eighth Amendment and 42 U.S.C. § 6011 (the Developmentally Disabled Assistance and Bill of Rights Act) because of doctrinal developments since the filing of this complaint. On January 23, 1984, the Supreme Court held in *Pennhurst State School & Hospital v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), that the Eleventh Amendment bars a federal suit against state officials to enforce state law; therefore, the state grounds must also be dismissed. Plaintiffs' claims for relief are now based on the Fourteenth Amendment Due Process Clause and § 504 of the Rehabilitation Act of 1973. Plaintiffs also seek injunctive relief requiring defendants to de-

velop and execute an individual plan for each plaintiff for placement in a community living arrangement.

Before the court are three motions:

1) Plaintiffs' Motion to Certify a Class;
2) Defendant Secretary of Public Welfare's Motion for Summary Judgment or, in the Alternative, to Stay the Proceedings; and
3) A Motion to Intervene of Alfred W., another resident of Woodhaven.

For the reasons stated below, defendant's motion for summary judgment is granted, plaintiffs' motion to certify a class is denied and the motion to intervene of Alfred W. is denied.

Defendant Secretary of Public Welfare (hereinafter "defendant Secretary") moves for summary judgment or, in the alternative, for a stay, on the ground that plaintiffs are members of the class certified in *Halderman v. Pennhurst State School & Hospital*, 446 F.Supp. 1295 (E.D.Pa.1977); *aff'd in part*, 612 F.2d 84 (3d Cir.1979); *vacated and remanded*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 964 (1981); *judgment reinstated on remand*, 673 F.2d 647 (3d Cir.1982); *reversed and remanded*, —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (*"Pennhurst"*), and are barred under the doctrines of *res judicata* and collateral estoppel from maintaining this action.

The *Pennhurst* action was filed in May, 1974 by retarded residents and former residents of Pennhurst State School and Hospital (now Pennhurst Center), an institution owned and operated by the Commonwealth of Pennsylvania, to obtain, *inter alia*, an injunction closing Pennhurst and requiring the state to provide care, training and education for class members in community living arrangements. *Pennhurst*, 446 F.Supp. at 1298. In November, 1976, the court certified a class consisting of all retarded persons "who as of May 30, 1974, and any time subsequent, have been or may become residents of Pennhurst...." 446 F.Supp. at 1300. The class includes all retarded persons residing at Pennhurst on that date, those on the waiting list and those who may be placed at Pennhurst

because of the unavailability of "alternative services in the community." *Id.* The defendants are "Pennhurst; the Pennsylvania Department of Public Welfare; various state and county officials responsible for supervising the Commonwealth's and the counties' retardation programs; and the superintendent and various employees of Pennhurst." 446 F.Supp. at 1301–02 (footnote omitted).

When the instant case was filed late in 1979, plaintiffs recognized that the decision of the Court of Appeals in *Pennhurst* would determine the federal claims presented herein but asserted a distinctive state contract claim justifying separate litigation. Plaintiff sought discovery on contractual arrangements regarding members of the putative class and defendants resisted the discovery and certification of the putative class. Developments in the *Pennhurst* litigation resulted in amendments to plaintiffs' complaint and a modified defendants' response regarding class certification. Status conferences were held to discuss the scheduling and disposition of this case in view of the status of the *Pennhurst* litigation.

Defendants Soffer and the City of Philadelphia then filed a motion for summary judgment on the ground that plaintiffs did not have a right to care in the least restrictive setting; that motion was denied. However, defendant Secretary's motion for summary judgment on the ground that plaintiffs as members of the class in *Pennhurst* were bound by the results of that litigation was held under advisement pending the submission of reports by the parties concerning the relationship of the class proposed in this litigation to that in *Pennhurst*. At the last conference concerning the status of this case in view of the *Pennhurst* litigation, it was thought that the Supreme Court decision on the appeal then pending might resolve this litigation but the latest opinion in *Pennhurst* filed January 24, 1984 reversed and remanded for further consideration of the federal grounds for the judgment of the district court.

■ A motion for summary judgment can be granted only when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). The first question is whether there is a "genuine issue as to any material fact." The fact material to this motion is whether or not named plaintiffs are members of the class certified in *Pennhurst* under Fed.R.Civ.P. 23(b)(1) and (2) as follows:

> [a]ll persons who as of May 30, 1974, and at any time subsequent, have been or may become residents of Pennhurst State School and Hospital. The members of the class are persons residing at Pennhurst State School and Hospital, persons residing in Bucks, Chester, Delaware, Montgomery and Philadelphia Counties who are on a waiting list for placement at Pennhurst State School and Hospital, and persons residing in Bucks, Chester, Delaware, Montgomery and Philadelphia Counties, who because of the unavailability of alternative services in the community, may be placed at the Pennhurst State School and Hospital.

446 F.Supp. at 1300.

An uncontradicted affidavit of Janice Allen, Assistant Director of Social Services at Pennhurst Center, states that both named plaintiffs were on the Pennhurst waiting list, so plaintiffs are members of the "waiting list" subclass in *Pennhurst.*[1] Also both plaintiffs arguably were members of the "may be placed" subclass certified in *Pennhurst* because they were domiciled in Philadelphia County (*see* Third Amended Complaint, ¶ 11) and at the time the class was certified, they were among those who "because of the unavailability of alternative services in the community, may [have been] placed at . . . Pennhurst . . . ." 446 F.Supp. at 1300. The certified class was never modified in this respect so that there seems no issue that plaintiffs are members of the class in *Pennhurst.*

■ The remaining question is whether defendant "is entitled to a judgment as a matter of law." *Goodman, supra.* Defendant asserts that plaintiffs are barred by the doctrines of *res judicata* and collateral estoppel from maintaining this suit because of the pendency of the *Pennhurst* action. Under the doctrine of *res judicata* "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 467 n. 6, 102 S.Ct. 1883, 1890 n. 6, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980). Collateral estoppel "precludes relitigation of issues actually litigated and determined in a prior suit [in which there is a final judgment], regardless of whether it was based on the same cause of action as the second suit." *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840 (3d Cir.1974). Both doctrines serve the purpose of preventing the waste of judicial resources by relitigating issues or claims already decided.

■ Class members are not precluded from instituting subsequent suits involving the same subject matter and the same parties, *see, e.g.,* 3B Moore's Federal Practice ¶ 23.92 (2d ed. 1982), but a court may issue "an injunction to stay proceedings in other courts when the injunction is warranted by equitable principles." *Id.,* at 23–570 (footnote omitted). *See also,* 1A, Pt 2 Moore's Federal Practice ¶ 0.219, p. 2385 (2d ed. 1983) ("Where [multiple actions between identical parties and involving the same subject matter] are pending in the courts of the same forum a plea of abatement of another action pending can result in the dismissal of all but the first action."). However, once a final judgment on the merits in a class action has been rendered

---

1. *See, Pennhurst,* 555 F.Supp. 1144, 1146 (E.D. Pa.1983) ("a class action in which the named plaintiffs, retarded persons (the 'Pennhurst class') who were either residents of Pennhurst . . . or on the waiting list for residence at Pennhurst as of May 30, 1974 . . . .").

by a court of competent jurisdiction, all members of the class are bound by the judgment unless and until reversed on appeal as to the class as a whole. *Hansberry v. Lee,* 311 U.S. 32, 43, 61 S.Ct. 115, 118–19, 85 L.Ed. 22 (1940) (class members bound by judgment where they are adequately represented by named parties, or where they participate in the litigation, or "where for any other reason the relationship between the parties present and those who are absent is such as legally to entitle the former to stand in judgment for the latter"); *Supreme Tribe of Ben-Hur v. Cauble,* 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921); *Bolden v. Pennsylvania State Police,* 578 F.2d 912 (3d Cir.1978); *Brown v. United States,* 508 F.2d 618, 627 n. 10 (3d Cir. 1974); *Giordano v. Radio Corp. of America,* 183 F.2d 558 (3d Cir.1950); Restatement, Second, Judgments § 41 (1982). In a case involving concurrent state and federal actions on the same subject matter, the Third Circuit stated:

> ... the existence of an action for a personal judgment does not impair or defeat the jurisdiction of the court in which an action for the same cause is pending. Both courts are free to proceed without reference to the action in the other court. Whenever a judgment is rendered in one court it may be pleaded in the other and the effect of that judgment will be determined by the application of the principles of res judicata by the other court.

*In Re Glenn W. Turner Enterprises Litigation,* 521 F.2d 775, 780 (3d Cir.1975) (*citing Kline v. Burke Construction Co.,* 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922)); *Jennings v. Boenning & Co.,* 482 F.2d 1128 (3d Cir.), *cert. denied,* 414 U.S. 1025, 94 S.Ct. 450, 38 L.Ed.2d 316 (1973).

■ There has been a judgment on the merits in *Pennhurst* in favor of plaintiffs; in December, 1977, the district court found that institutionalizing plaintiffs at Penn-

hurst violated their right to "freedom from harm" under the Eighth and Fourteenth Amendments, 446 F.Supp. at 1320–21, "non-discriminatory habilitation" under the equal protection clause and § 504 of the Rehabilitation Act, *id.* at 1321–24, and "minimally adequate habilitation" under the due process clause and the Pennsylvania Mental Health and Mental Retardation Act of 1966, *id.* at 1314–18, 1322–23. The court held that "due process demands that if a state undertakes the habilitation of a retarded person, it must do so in the least restrictive setting consistent with that individual's habilitative needs." *Id.,* at 1319.[2] The district court ordered defendants "to provide suitable community living arrangements for the retarded residents of Pennhurst, *and those retarded persons on its waiting list ...*." *Id.* at 1326 (emphasis supplied). The district court ordered defendants to develop individualized habilitation plans for each member of the class and to halt further placements at Pennhurst. *Id.* at 1326–29. A special master was appointed "to plan, organize, direct, supervise and monitor the implementation of this and any further orders of the Court." *Id.* at 1326. So, the district court in *Pennhurst* has granted named plaintiffs the very relief they seek here.[3]

Whether the district court's judgment in *Pennhurst* is binding on plaintiffs and precludes them from maintaining this suit depends on the status of that judgment; *Pennhurst* is still on appeal. "The federal rule is that the pendency of an appeal does not suspend the operation of an otherwise final judgment as res judicata or collateral estoppel, unless the appeal removes the entire case to the appellate court and constitutes a proceeding de novo." 1B Moore's Federal Practice § 0.416[3], p. 521–22 (2d ed. 1982) (footnotes omitted); *accord, Huron Holding Co. v. Lincoln Mine Operating Co.,* 312 U.S. 183, 188–89,

---

**2.** The district court defined "habilitation" as "the term of art used to refer to that education, training and care required by retarded individuals to reach their maximum development." 446 F.Supp. at 1298.

**3.** Defendant Secretary represented to this court by letter dated June 20, 1983 that plaintiff Jerry G. has already been placed in the community pursuant to an Order of the *Pennhurst* district court.

61 S.Ct. 513, 515–16, 85 L.Ed. 725 (1941) (dictum); *Reed v. Allen,* 286 U.S. 191, 199, 52 S.Ct. 532, 533–34, 76 L.Ed. 1054 (1932); *Fidelity Standard Life Insurance Co. v. First National Bank & Trust Co.,* 510 F.2d 272, 273 (5th Cir.1975) ("A case pending appeal is *res judicata* and entitled to full faith and credit unless and until it is reversed on appeal.").

*Pennhurst* has been reviewed several times by the Court of Appeals for the Third Circuit and the Supreme Court. In 1979 the Court of Appeals affirmed the district court's opinion in part and reversed and remanded in part. 612 F.2d 84 (3d Cir. 1979). The Court of Appeals affirmed the district court's judgment that retarded citizens had a right to habilitation in the least restrictive environment, but on different grounds; the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6010. *Id.* at 95–100, 103–07 (*see id.* at 104 n. 28). The Court of Appeals also held that the Pennsylvania Mental Health and Mental Retardation Act of 1966, ("MH/MR Act"), Pa.Stat.Ann., Title 50, §§ 4101 4704 (Purdon 1969 and Supp.1982) provides a right to adequate habilitation, but did not address whether this statute created a right to habilitation in the least restrictive environment. *Id.* at 100–03. The Court of Appeals did not decide whether there was a cause of action under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1976 ed. and Supp. V), *id.* at 108, or the Constitution. *Id.* at 104. The Court of Appeals further held that the district court erred in banning all future admissions to Pennhurst. *Id.* at 115–16.

The Supreme Court, holding that 42 U.S.C. § 6010 did not create any substantive rights, reversed and remanded to the Court of Appeals for consideration of whether the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6000, provided relief under any section other than § 6010 (*e.g.,* §§ 6011, 6063). *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). The Court also remanded for consideration of § 504 of the Rehabilitation Act, state law and the constitutional issues.

But on remand the Court of Appeals affirmed its prior judgment on the ground that a Pennsylvania Supreme Court decision, *In Re Schmidt,* 494 Pa. 86, 429 A.2d 631 (1981), had declared plaintiffs' right to habilitation in the least restrictive setting under the Pennsylvania MH/MR Act; 673 F.2d 647 (3d Cir.1982). The Court of Appeals did not find it necessary to consider the other federal grounds for the district court's decision. On appeal to the Supreme Court, this determination on state grounds was reversed because the Court held that the Eleventh Amendment prohibited a federal court from ordering state officials to conform to state law. —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Supreme Court remanded again to the Court of Appeals to consider the federal bases for the district court's judgment: the Eighth and Fourteenth Amendments and § 504 of the Rehabilitation Act of 1973. 104 S.Ct. at 921, 79 L.Ed.2d at 94. The Court also directed the Court of Appeals to "consider whether relief may be granted respondent under the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. §§ 6011, 6063." *Id.* The matter is now before the Court of Appeals.

"When a judgment has been subjected to appellate review, the appellate court's disposition of the judgment generally provides the key to its continued force as res judicata and collateral estoppel." 1B Moore's Federal Practice § 0.416[2], p. 517 (2d ed. 1983). The district court's judgment in *Pennhurst* may be the basis of a *res judicata* or collateral estoppel defense on the grounds still pending on appeal. Judge Broderick's holding that plaintiffs' rights to minimally adequate habilitation under the Due Process Clause of the Constitution and § 504 of the Rehabilitation Act have not been reversed; neither has his holding that due process demands that if a state undertakes the habilitation of a retarded person, it must do so in the least restrictive setting consistent with that individual's habilitative needs. Therefore, as members

of the *Pennhurst* class, plaintiffs are precluded from maintaining this suit.[4]

Not only did the *Pennhurst* district court grant the very relief plaintiffs seek here, during the pendency of the appeals that court has continued to issue orders directing relief to Pennhurst residents and those other than Pennhurst residents. Any relief this court might order would conflict with the *Pennhurst* court's orders. For instance, in an April 24, 1980 amendment to its original injunctive order of March 17, 1978, the district court further enjoined defendants from:

> recommending, or in any way counselling, that any individual on the waiting list for Pennhurst as of March 17, 1978 be committed to any institution for the retarded operated by the Commonwealth .... and ... participating in any program or activity in connection with the placement in the future or commitment in the future of any such individual to any such institution.

On March 2, 1981, the district court ordered defendants to place 129 retarded persons who were *not* residents of Pennhurst in community facilities. On December 22, 1982, the district court ordered defendants to provide community living facilities for "at least 81 other members of the plaintiff class from the Southeast Region of Pennsylvania not now residing at Pennhurst ... during the period from the date of this Order to June 30, 1984." 555 F.Supp. 1144, 1164 (E.D.Pa.1982) (for a more complete history of this litigation see *id.* at 1146–1155).

The district court has held the defendants in contempt for failing to place members of the class in community facilities expeditiously. *See e.g.,* 526 F.Supp. 414 (E.D.Pa.1981), 533 F.Supp. 631 (E.D.Pa. 1981), 533 F.Supp. 641 (E.D.Pa.1981). The district court has declined to stay its original injunction pending appeal. *See, e.g.,* 526 F.Supp. 409 (E.D.Pa.1981). In June, 1980, the Supreme Court issued a partial stay of the injunction as to those who did not wish to leave Pennhurst, 448 U.S. 905, 100 S.Ct. 3047, 65 L.Ed.2d 1135 (1980), but the district court subsequently ordered hearings to determine voluntariness before releasing residents into community facilities. The Supreme Court declined to disturb this interpretation of its stay. *See,* 555 F.Supp. at 1147. Thus, relief is available to plaintiffs in the action in which they have already prevailed. For these reasons summary judgment is granted for defendant Secretary.

■■■ Defendants Soffer and the City of Philadelphia have not moved for summary judgment on the basis that plaintiffs are barred from maintaining this suit under the doctrines of *res judicata* and collateral estoppel. However, a court is empowered to enter summary judgment on its own motion where a non-moving party is entitled to a judgment as a matter of law, *Missouri Pacific Railroad Co. v. National Milling Co.,* 409 F.2d 882 (3d Cir.1969); *DeFelice v. Philadelphia Board of Education,* 306 F.Supp. 1345 (E.D.Pa.1969) *aff'd* 432 F.2d 1358 (3d Cir.1970); 6 Moore's Federal Practice ¶ 56.12 (2d ed. 1982); *contra Pinkus v. Reilly,* 71 F.Supp. 993, 995 (D.N.J.1947) (court stated that summary judgment should be entered for non-movant but withheld judgment pending filing of motion), and the party against whom summary judgment is entered has had a full and fair opportunity to contest the granting of summary judgment. *See, Fountain v. Filson,* 336 U.S. 681, 682–83, 69 S.Ct. 754, 755–56, 93 L.Ed. 971 (1949). Here there is no dispute as to any material fact and non-moving defendants are entitled to judgment as a matter of law for the same reasons as defendant Secretary. Plaintiffs have fully availed themselves of the opportunity to brief and argue this *res judicata* issue in response to defendant Secretary's motion. For these reasons summary judgment will also be entered for non-moving defendants Soffer and the City of Philadelphia.

---

**4.** There has been no suggestion by plaintiffs that they received inadequate representation by the named plaintiffs in *Pennhurst.* But in view of the extensive effective litigation in *Pennhurst,* there can be no question that plaintiffs were adequately represented in that action.

Plaintiffs' motion to certify a class is denied. Plaintiffs and all members of the class they proposed to represent are barred from maintaining this action for the reasons stated. Pursuant to the court's Order of May 24, 1983, defendant Secretary represented in a June 20, 1983 letter to the court that as of June 8, 1983, 100 Philadelphia county residents at Woodhaven had already been referred for discharge. Defendant stated that all 100 are members of the *Pennhurst* class (25 being former Pennhurst residents, 34 on the Pennhurst waiting list and 41 subject to placement at Pennhurst because of the unavailability of community living arrangements). Because some persons are placed in the community and others are declared eligible for release, this list is subject to continual change. But it is apparent with the encompassing class definition in *Pennhurst* that the majority, if not the entirety, of the class plaintiffs seek to represent are members of the *Pennhurst* class. As such they are bound by the district court's judgment in their favor and are barred from obtaining relief in this separate suit.

Because plaintiffs seek to represent a class "who presently reside or in the future will reside at the Woodhaven Center," Third Amended Complaint, ¶ 11, there may be present or future residents of Woodhaven who would be in this class and not in the *Pennhurst* class.[5] But such individuals cannot be represented by plaintiffs under Fed.R.Civ.P. 23(a)(3) and (4). Because plaintiffs cannot maintain this suit, the "typicality of claims" requirement of 23(a)(3) and the "adequacy of representation" requirement of 23(a)(4) cannot be met. Further, it is seriously doubted that the number of such individuals, if any at all, is so great as to render joinder of them impractical as required under 23(a)(1). That consideration leads the court to deny this motion.

5. The class definition in *Pennhurst*, though, renders this an unlikely possibility.

6. Defendants Secretary and the City of Philadelphia assert in opposition to the motion to intervene that Alfred W. is also a member of the *Pennhurst* class by virtue of his being on the

Alfred W.'s motion to intervene in this action is also denied. As someone who may be placed at Pennhurst he is also a member of the *Pennhurst* class.[6] Additionally, because summary judgment has been granted as to defendant Secretary, there remains no action in which Alfred W. may intervene.

Pennhurst waiting list from 1975 to 1977. (Memorandum of Defendant City of Philadelphia in Opposition to Motion to Intervene, at 2). Alfred W. offered no affidavit or other submission in opposition.